# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hartford Underwriters Insurance Company,<br><br>    Plaintiff,<br><br>  vs.<br><br>Newco International, Inc.,<br><br>    Defendant. | CV 11-6091 RSWL (MRWx)<br><br>**Statement of Uncontroverted Facts and Conclusions of Law Re: Plaintiff's Motion for Partial Summary Judgment** [40] |

After consideration of the papers and arguments in support of and in opposition to Plaintiff Hartford Underwriters Insurance Company's ("Plaintiff") Motion for Partial Summary Judgment [40], the Court makes the following findings of fact and conclusions of law.

## UNCONTROVERTED FACTS

1. Plaintiff issued a Spectrum Business Insurance policy ("Policy") to Defendant Newco International, Inc. ("Defendant"), effective February 19, 2011 to February 19, 2012. Mayo Decl. for Pl.'s Mot., Ex. A,

1

Ex. B at 21:13-22:18.

2. As issued, the "Actual Loss Sustained Business Income & Extra Expense-Specified Limit Coverage" ("Business Income Limit") in the Policy was $105,000. Id., Ex. A at HL-CDCal0000140.

3. On March 21, 2011, Defendant submitted to Plaintiff a loss claim under the Policy. Compl. ¶ 7; Answer ¶ 7.

4. On April 6, 2011, Brent Adams, an employee of Defendant's insurance broker, Insurex, emailed Plaintiff and requested on Defendant's behalf that Plaintiff retroactively reform Plaintiff's Policy and increase the Business Income Limit to $5 million. Willis Decl. for Pl.'s Mot. ¶ 11, Ex. D.

5. On April 12, 2011, Plaintiff paid Defendant $105,000 for alleged business income losses arising from the loss of March 21, 2011. Compl. ¶ 7; Answer ¶ 7.

6. On April 21, 2011, Plaintiff informed Defendant through Defendant's CEO, Mark Johnston, that upon review of Defendant's underwriting file, there was no basis to reform the Policy pursuant to Mr. Adams' April 6, 2011, email. Mayo Decl. for Pl.'s Mot., Ex. F.

7. On April 26, 2011, Plaintiff further explained to Mr. Johnston that there was no indication of any agreement between Plaintiff and Defendant specifying a Business Income Limit different from the limit expressed in the Policy, and there were no grounds for

retroactively reforming the Policy to reflect a different Business Income Limit after Defendant had already incurred loss. Id., Ex. H.

8. On May 17, 2011, Mr. Adams re-sent to Plaintiff his April 6, 2011, email requesting reformation of the Policy. Willis Decl. for Pl.'s Mot. ¶ 13, Ex. E.

9. On June 1, 2011, Mr. Adams re-sent to Plaintiff his April 6, 2011, email requesting reformation of the Policy. Id. at ¶ 14, Ex. F.

10. On June 5, 2011, a Hartford service representative issued a retroactive endorsement, without authority from a Hartford underwriter to do so, which was backdated to February 19, 2011, and purported to increase the Policy's Business Income Limit to $5 million. Id. at ¶¶ 14, 16-18.

11. Plaintiff informed counsel for Defendant on July 15, 2011, that the Backdated Endorsement was issued in error and would be rescinded. Mayo Decl. for Pl.'s Mot., Ex. L.

12. Plaintiff attempted to return Defendant's premium of $3,934.59 via electronic transfer on July 22, 2011, and voided the Backdated Endorsement on July 27, 2011. Willis Decl. ¶¶ 19-20.

## CONCLUSIONS OF LAW

1. California law provides that there must be a meeting of the minds between contracting Parties in order for a valid contract to be formed. See Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks,

1  Inc.), 62 Cal. App. 4th 348, 357-58 (1998); In re First
2  Capital Life Ins. Co., 34 Cal. App. 4th 1283, 1288
3  (1995).
4       2. There was no meeting of the minds between
5  Plaintiff and Defendant upon issuance of the Backdated
6  Endorsement because at no point did Plaintiff intend to
7  approve the retroactive endorsement that Mr. Adams had
8  requested for Defendant.  Therefore, the Backdated
9  Endorsement is not a valid contract.
10      3. However, even if the Backdated Endorsement did
11 constitute a valid contract, it remains unenforceable
12 because Plaintiff properly rescinded the Endorsement on
13 the basis of its unconscionability.  See generally
14 Donovan v. RRL Corp., 26 Cal. 4th 261, 281-82 (2001).
15      4. The Backdated Endorsement was created on the
16 false premise that Plaintiff assented to its terms and
17 subject matter, when in fact Plaintiff did not.  Thus,
18 there was no mutual assent to the creation of the
19 Backdated Endorsement.
20      5. Issuance of the Endorsement without the Parties'
21 mutual assent goes to the heart of their agreement
22 because mutual assent is an essential element of
23 contract formation.  See Deleon v. Verizon Wireless,
24 LLC, 207 Cal. App. 4th 800, 813 (2012).
25      6. The Backdated Endorsement's issuance was a
26 mistake that had a material effect upon the Parties'
27 agreement, for without the mistaken issuance there
28 would be no "contract" in the first place.

1    7. The material mistake of the Backdated
2 Endorsement's issuance is disadvantageous for
3 Plaintiff, the rescinding party, because the Backdated
4 Endorsement retroactively increases Defendant's
5 Business Income limit by almost $4.9 million *after*
6 Defendant has already incurred loss.  See Donovan, 26
7 Cal. 4th at 282.
8     8. Plaintiff does not bear the risk of the
9 Backdated Endorsement's mistaken issuance because (1)
10 the Parties did not agree to allocate the risk of
11 unanticipated "clerical error" to Plaintiff, (2)
12 Plaintiff did not have limited knowledge that it
13 erroneously treated as sufficient, and (3) it would not
14 be reasonable to allocate the risk of the mistake to
15 Plaintiff where Plaintiff has not neglected a legal
16 duty in relation to the Backdated Endorsement's
17 issuance.  See Restatement (Second) of Contracts § 154;
18 see also Donovan, 26 Cal. 4th at 283 (2001).
19    9. The Backdated Endorsement is procedurally
20 unconscionable, as evidenced by Plaintiff's surprise
21 upon learning that the Endorsement was issued.
22    10. The Backdated Endorsement is substantively
23 unconscionable, for its enforcement would result in the
24 overly harsh and one-sided result of Defendant
25 obtaining approximately $4.9 million of additional
26 insurance coverage, even though Defendant did not
27 update its Policy coverage until after it sustained
28 loss and Plaintiff had already found that there were no

1  grounds to provide such coverage.  <u>Id.</u> at 291-92.
2      11. Plaintiff has satisfied the procedural steps
3  required to effect rescission by giving notice to
4  Defendant on July 15, 2011, of its Plaintiff's intent
5  to rescind the Backdated Endorsement and offering on
6  July 22, 2011, to fully restore Defendant's additional
7  premium payment.  <u>See</u> Cal. Civ. Code § 1691.
8      12. Notice of rescission and offer to restore
9  Defendant were also effected upon Plaintiff serving
10 Defendant with the Complaint in this Action.  <u>Id.</u>
11     13. Based on the foregoing, Plaintiff is entitled
12 to Partial Summary Judgment as to the portions of its
13 second and third claims and both of Defendant's
14 counterclaims that relate to the Policy's coverage of
15 lost business income.
16
17 **IT IS SO ORDERED.**
18 DATED: November 9, 2012.
19
20                               RONALD S.W. LEW
                                 _____
21                               **HONORABLE RONALD S.W. LEW**
                                 Senior, U.S. District Court Judge